**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EUGENE SEABROOKS,                :
a/k/a Eugene Seabrookes,         :
                                 :   Civil Action No. 08-4713 (JAG)
        Plaintiff,                :
                                 :
        v.                        :   **OPINION**
                                 :
IRVIN BRADLEY, et al.,           :
                                 :
        Defendants.               :

**APPEARANCES**:

Plaintiff pro se
Eugene Seabrooks
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861

**GREENAWAY, JR.**, District Judge

   Plaintiff Eugene Seabrooks, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

   At this time, this Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A.

---

   [1] Plaintiff has paid the filing fee.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that Defendant Irvin Bradley, a detective with the Newark Police Department, was a "core participant" in the 1994 issuance of an arrest warrant for Plaintiff, on charges of murder and related offenses. Plaintiff alleges that there was no probable cause for the arrest warrant. Those charges were dismissed because a material prosecution witness, Sean Taylor, did not appear and could not be located.

Plaintiff alleges that on January 3, 1997, members of the Wilmington, North Carolina, Police Department received information that Plaintiff was wanted for allegedly organizing the murder of Sean Taylor, via telephone, from North Carolina. Plaintiff alleges that on January 3, 1997, members of the Wilmington Police Department entered his business, without a warrant and without any reasonable grounds to believe that Plaintiff was at that location. Members of the Wilmington Police Department arrested Plaintiff on January 3, 1997.

Plaintiff alleges that on January 5, 1997, Defendant Officer B. McSheehy and/or Defendant Officer Daryl B. Gronau, both of the Wilmington Police Department, obtained a search warrant for a private residence and that on January 6, 1997, the residence of Jeanette Goodman was searched. Plaintiff does not state whether

he was an owner or resident of the searched property.  He alleges that there was not probable cause to search that property.  In addition, Plaintiff alleges that, on January 6, 1997, Defendant Officer B.T. Warrelman requested the issuance of a search warrant for Plaintiff's business.  As had been previously asserted, Plaintiff alleges that there was no probable cause to search his business.

Plaintiff was convicted of both the 1994 murder of Anthony Lewis and the 1997 murder of Sean Taylor.[2]  He alleges that the lawfulness of the arrest warrant was litigated in 2002 in connection with his criminal trial.  He is presently confined, pursuant to those convictions.[3]

---

[2] Plaintiff includes various allegations that, in October 1997, Essex County prosecutors disregarded certain information that Plaintiff contends was exculpatory and proceeded with a prosecution based upon a theory they allegedly knew to be false. See also State v. Seabrooks, 2007 WL 3033947 (N.J. Super. Ct. App. Div. Oct. 19, 2007) (describing these claims more fully and affirming Plaintiff's conviction).  These allegations are not relevant to the instant complaint because Plaintiff does not name these Essex County prosecutors as defendants.  Further, the named defendants are not alleged to be involved in the challenged acts of the Essex County prosecutors.  Therefore, there is no reason to recite those allegations here more fully.

[3] See State v. Seabrookes, 2006 WL 1060502 (N.J. Super. Ct. App. Div. April 24, 2006), op. after remand, 2007 WL 3033947 (N.J. Super. Ct. App. Div. Oct. 19, 2007), certif. denied, 195 N.J. 519 (2008).  This Court will take judicial notice of the dockets of other courts in cases related to this Petition.  See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is

Plaintiff seeks compensatory and punitive damages for the allegedly unlawful arrest and searches in 1997.

In response to these factual allegations, by Opinion and Order [Docket Entry Nos. 5, 6] entered March 31, 2009, this Court ordered Plaintiff to show cause why the Complaint should not be dismissed as untimely.

Plaintiff has submitted a Response [Docket Entry No. 8] in which he argues (1) that he did not "discover" his injury until April 2, 2009, when he received certain documents from counsel in his current state post-conviction relief proceeding, and (2) that the time for bringing suit was equitably tolled until he received certain documents on April 2, 2009.  Plaintiff alleges that, on that date, he received a copy of Defendant Irvin Bradley's 1994 Continuation Report, which indicates that Defendant Bradley procured an arrest warrant for Plaintiff at the address of 17 Lenox Avenue in Newark, New Jersey, rather than at 215 N. 9th Street, (the address of Plaintiff's co-defendant), as Defendant Bradley testified at trial.[4]  In fact, according to the Continuation Report, Plaintiff was arrested by Sergeant Jim Chelel at 380 Meeker Street.

---

not subject to reasonable dispute over its authenticity).

[4] Plaintiff alleges that the statute of limitations should be equitably tolled because he was "actively misled" by this difference, regarding the address on the arrest warrant, between trial testimony and Defendant Bradley's Continuation Report.

Plaintiff also alleges that on April 2, 2009, he received from his counsel a copy of a fax from Wilmington police to Newark police, dated May 2, 1997. The fax indicates that the Wilmington police received the Newark warrant for Plaintiff's arrest on June 23, 1997, twenty days after Plaintiff's arrest in Wilmington. Plaintiff does not allege how or when his PCR counsel came into possession of these documents, nor does Plaintiff explain whether or why his prior counsel did not have a copy of this report.[5]

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

---

[5] Plaintiff has asked that the Complaint be deemed amended to include these factual allegations. This request will be granted, and this Court will accord these allegations the same presumption of truth for purposes of this screening process.

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim. Twombly, 550 U.S. at 556-57. The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is

7

> entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting

9

under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

Taking into account the additional factual allegations made by Plaintiff, it appears that Plaintiff's claims are time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Jones v. Bock, 549 U.S. 199, 215 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").  See also Hunterson v. DiSabato, 244 F. App'x 455, 457 (3d Cir. 2007) ("district court may sua sponte dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run").

The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is <u>not</u> resolved by reference to state law." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) (emphasis in original). A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982). <u>See also</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at 1386).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. <u>See</u> <u>Wilson v.</u>

11

Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J. STAT. ANN. § 2A:14-21 (detailing tolling because of minority or insanity). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 788 A.2d 867, 879-80 (N.J. Super. Ct. App. Div. 2002)

(citations omitted). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, according to the allegations of his Complaint and Response, Plaintiff's false arrest claims accrued as soon as he was arrested, and the limitations period began to run as soon as he was held pursuant to legal process. See Wallace v. Kato, 549 U.S. 384, 396 (2007). While the specific dates when Plaintiff was held pursuant to legal process, with respect to either arrest, are not revealed in the Complaint, they certainly were no

later than his trials in October 1, 1996, with respect to the first arrest,[6] and in 2002, with respect to the second arrest.[7]

The claims for the allegedly unlawful searches under the Fourth Amendment accrued, and the limitations period began to run, on the dates of the searches, in January 1997, more than eleven years before the date of the Complaint, September 16, 2008. Plaintiff alleges no facts or extraordinary circumstances that would permit this Court to find that he did not "discover" his injury until he received the described documents on April 2, 2009, or to find for statutory or equitable tolling under either New Jersey or federal law. Plaintiff was aware of the arrests and searches at the time that they occurred and, with reasonable diligence, could have learned of the contents of applicable police reports, arrest warrants, and search warrants.

Moreover, and specifically with respect to the documents relating to Plaintiff's arrests that were attached to his Response, Plaintiff has failed to allege facts establishing any unlawful arrests.

Under the Fourth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth

---

[6] See State v. Seabrookes, 2006 WL 1060502, *4.

[7] In addition to Plaintiff's statement in the Complaint that he was tried in 2002, the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on July 26, 2002, for two counts of murder and related offenses.

14

Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), the people are to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause."

Supreme Court cases construing the Fourth Amendment "reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was a reasonable ground for making the arrest." United States v. Watson, 423 U.S. 411, 418 (1976) (referring to arrest in a public place).  "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." Id. at 417.

"Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.  Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted).

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Super. Ct. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  Lind v. Schmid, 337 A.2d 365, 369 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather,

16

probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Finally, the Supreme Court has never held "that violations of state arrest law are also violations of the Fourth Amendment;" to the contrary, "when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." Virginia v. Moore, 128 S.Ct. 1598, 1605 (2008).

Here, Plaintiff alleges, with respect to the first arrest, a discrepancy regarding Plaintiff's address, and, with respect to the second arrest, that the North Carolina police did not have a physical copy of the warrant in their possession at the time they arrested him. Neither of these facts establishes a Fourth Amendment violation.

Plaintiff does not allege that the facts known to the arresting officers were insufficient to establish probable cause. To the contrary, based upon the Continuation Report attached to Plaintiff's Response to the Order to Show Cause, the police had been told by Sean Taylor, an eyewitness to the murder of Anthony Lewis, that Plaintiff had committed the murder. Further, Sean

17

Taylor picked Plaintiff's photo out of a photo array.  These facts were sufficient to establish probable cause for Plaintiff's arrest on the 1994 murder of Anthony Lewis, and thus, defeat his claim for false arrest with respect to the 1997 arrest for the murders of both Anthony Lewis and Sean Taylor.  See Startzell v. City of Philadelphia, PA, 533 F.3d 183, 204, n. 14 (3d Cir. 2008) (establishment of probable cause with respect to any one charge is sufficient to defeat Fourth Amendment claim for false arrest, with respect to multiple charges).

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.  An appropriate order follows.


                                    S/Joseph A. Greenaway, Jr.
                                    JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:   December 4, 2009